IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE LYNN TOMPKINS, | : | CIVIL NO. 1:CV-11-1147 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| COUNTY OF LACKAWANNA , et al., | : | |
| Defendants | : | |

# **M E M O R A N D U M**

Jamie Lynn Tompkins ("Tompkins"), formerly an inmate confined at the Lackawanna County Prison ("LCP"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are Lackawanna County, LCP, and Tina Cumber, a correctional officer at LCP. Tompkins challenges a strip search that took place during the course of a contact visit with her mother at LCP on November 21, 2010. Presently before the Court for consideration is Defendants' motion for summary judgment. (Doc. No. 24.) For the reasons that follow, the motion will be deemed unopposed and granted.

**I.    Background**

Tompkins alleges that on November 21, 2010, her mother came to the Lackawanna County Prison for a contact visit with her. During the visit, several officers responded to a "Code Blue to the multi-purpose room" where the visit was taking place. (Doc. No. 1, Compl. at 2.) Tompkins states that Defendant Cumber ordered her to go into the restroom and strip so that a search could be conducted. According to Tompkins, Cumber used vulgar language and excessive force. When Tompkins objected to the search as illegal, an unidentified officer told her that if she did not cooperate she could be x-rayed. Cumber continued to subdue Tompkins "spread eagle" while female officers opened and closed the restroom door. Tompkins challenges

the search as excessive, embarrassing and humiliating. She believes that the search was conducted to harass her for testifying against the Lackawanna County Prison in previous years. She seeks monetary damages.

Service of the complaint was directed and an answer thereto filed by Defendants on October 10, 2011. (Doc. No. 16.) Thereafter, an order was issued imposing a discovery and dispositive motions deadline in this matter. (Doc. No. 17.) On May 11, 2012, Defendants filed a motion seeking summary judgment in this action. (Doc. No. 24.) A supporting brief, statement of materials facts and evidentiary materials were submitted. (Doc. Nos. 25, 26.) Because Tompkins failed to file any opposition to Defendants' motion, an order was issued on September 25, 2012, directing her to do so. (Doc. No. 27.) She was forewarned that the failure to file an opposing brief, a statement of facts and evidentiary materials would result in the motion being deemed unopposed.

On October 4, 2012, this order was returned to the Court marked as "Undeliverable" because Tompkins was released from prison. (Doc. No. 28.) On October 9, 2012, a copy of the 9/25/12 order was remailed to Tompkins at her current address as provided by her to Defendants at her deposition.[1] This is also the most current address that now appears on the docket in this action. Due to an oversight on the part of the Clerks Office, the wrong street address was typed on the envelope mailed by the Clerks Office on October 9, 2012, and it was returned to the Court. (Doc. No. 29.) The order was thereafter remailed to the correct address on October 24, 2012. Pursuant to the order, Tompkins was afforded fourteen (14) days within which to submit her opposition to Defendants' pending motion. The relevant time period has expired, and

---

[1] The address is 900 W. Third Street, Williamsport, Pennsylvania, 17701.

Tompkins has failed to file any opposition to the motion. As such, the motion for summary judgment will be deemed unopposed and addressed on the merits.

**II.     Standard**

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2]  A fact is "material" if it will "affect the outcome of the suit under the governing law .... " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence.  All reasonable inferences are also to be resolved against the moving party. Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).   However, "a mere scintilla of evidence,"  without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 249.  In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-minded jury could reasonably decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir.

---

[2] Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010.  The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c).  Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact"), this change does not affect the substantive standard or the applicability of prior decisions construing the standard.  Fed. R. Civ. P. 56(a) advisory committee's note (emphasis added).

1989)(quoting <u>Anderson</u>, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant "must point to concrete evidence in the record" in that mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995).

### III. Undisputed Facts

Along with their motion for summary judgment and brief, Defendants filed a Statement of Undisputed Facts and supporting evidentiary materials. (Doc. No. 25.) Because Tompkins has failed to file a Statement of Facts in response to Defendants' submission, the facts as set forth in Defendants' statement will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1. The undisputed facts are as follows.

On November 21, 2010, Tompkins was an inmate at the Lackawanna County Prison and had a contact visit with her mother, Debra Hughes. (Doc. No. 1, Compl. at ¶3.) During the contact visit, a "Code Blue" was called, and Tompkins was strip searched by Defendant Cumber. (<u>Id</u>.) On March 26, 2012, Defendants conducted the deposition of Tompkins with respect to this incident. (Doc. No. 25-1, Ex. A, Tompkins Dep.) In her deposition, Tompkins states that she

4

was visiting with her mother in the interview room when she heard a "Code Blue" alert. (Id. at 11.) Cumber entered the interview room and took Tompkins into the restroom, told her to strip and searched her. (Id.) Cumber touched her thigh, spread her legs apart and held her up against the wall. (Id.) When Cumber asked Tompkins to squat and cough, she complied. Tompkins was interviewed by Captain Chiarelli and asked if she had contraband. Tompkins admitted to having tobacco. (Id. at 12.) Tompkins went back into the bathroom with Correctional Officer Bundi and gave her the tobacco. (Id. at 12-13.) She was then written up for possessing contraband. (Id. at 13.) Tompkins admitted to receiving contraband from her mother during her contact visit and that the contraband was tobacco. (Doc. No. 25-1, Ex. A at 15.) She further admitted to placing the contraband in her vagina. (Id.) Tompkins did not sustain any injuries as a result of the search. (Id. at 19.)

Tompkins believes that the search was conducted to harass her because she had previously testified against the Lackawanna County Prison with respect to harassment and drug issues at the prison. This testimony was given by Tompkins to the grand jury in 2002, eight years before the incident which is the subject of this action. The testimony provided had nothing to do with Defendant Cumber or anyone else involved in the issue which serves as the basis of the instant action. (Doc. No. 25-1, Ex. A at 20, 21.)

Defendant Cumber has been employed as a correctional officer at LCP for approximately 7½ years at LCP, and has been trained in the proper way to conduct a strip search on a female inmate. (Doc. No. 25-1, Ex. B, Cumber Aff.¶ 1.) Cumber was directed to respond to the multi-purpose room on November 21, 2010 by her superior officer, Lieutenant McGraw, to conduct a strip search on Tompkins. McGraw directed Tompkins into a restroom adjacent to the multi-

5

purpose room.  As Cumber followed Tompkins into the restroom, she had already begun to remove her pants and underwear prior to Cumber closing the door to the restroom.  Cumber had not yet directed Tompkins to disrobe at this point.  (Id., ¶¶ 2, 3.)  After closing the door, Cumber directed Tompkins to squat and cough, which is standard strip search procedure.  She complied with this order, and as she did so, a small black item appeared to be coming out of her vaginal area.  (Id. ¶¶ 4, 5.)  When Tompkins began to reach for the item, Cumber grabbed her hands so that the item could not be reinserted into the vagina.  Because Tompkins began to kick Cumber at this point, Cumber used her legs to attempt to block the kicks.  At no point in time did Cumber touch Tompkin's legs with her hands or spread her legs apart by the use of her hands.  The use of Cumber's legs was exclusively for the purposes of defending herself and preventing any injury to herself or to Tompkins.  (Id. ¶5.)  Cumber then instructed Tompkins when she was upright to comply with her orders and placed handcuffs on her.  (Id. ¶6.)  After being cuffed, Tompkins continued to kick her legs until Nurse Kresge and Officer Bondy arrived as backup.

After placing the handcuffs on Tompkins, Cumber had no further physical contact with her, and at no point used vulgar language or took any action that would have resulted in Tompkins' vaginal area being exposed to other correctional officers.  (Id. ¶¶ 7, 8, 10.)  Cumber completed a misconduct report and an incident report with respect to this matter. (Doc. No. 25-1, Cumber Aff., Ex. A.)

**IV.** **Discussion**

    **A.** **Use of vulgar language**

Even if Defendant Cumber used vulgar language as alleged by Tompkins, mere words

spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). Accordingly, any claim of verbal assault or the use of vulgar language fails to state a cognizable claim.

B.   **Excessive force claim**

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8 (1992). When reviewing Eighth Amendment excessive force claims, the court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. In making the determination as to whether the force applied was excessive, the following factors must be examined: "(1) 'the need for the application of force;" (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of the injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of the response.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). The prisoner need not show significant injury to state an excessive force claim. Hudson, 503 U.S. at 8, 10. However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of

7

action. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excused from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10. Further, an inmate who complains of a "push or shove" that causes no discernible injury "almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010))(citing Hudson, 503 U.S. at 9.)

Based upon the undisputed facts in the instant case, it cannot be said that the actions taken by Cumber rise to the level of a constitutional violation. Tompkins was strip searched by Cumber as a result of a "Code Blue" alert that was called at the prison. She admits receiving contraband in the form of tobacco from her mother and inserting it into her vagina during the course of the contact visit. With respect to the strip search, the parties dispute whether Cumber touched Tompkins thigh and spread her legs apart. However, in light of the undisputed fact that Tompkins admits to having stashed contraband in her vagina, even if any such actions were taken by Cumber, they clearly cannot be considered excessive under the undisputed circumstances existing at the time. Further, after Tompkins was directed to squat and cough, there is no dispute that a small black item appeared to be coming out of her vaginal area, and that Tompkins began to reach for the item. Even if Cumber may have grabbed Tompkins' hands at this point, it cannot be argued in light of the undisputed facts that such force was not applied in a good-faith effort to prevent Tompkins from accessing the contraband. There are no facts in the record to suggest that Cumber used any force other than what was necessary to prevent Tompkins from accessing and/or attempting to destroy the contraband in her possession. The undisputed record further reveals that Tompkins began to kick Cumber at this point. Cumber

8

states that she used her legs to defend herself and prevent any injury to herself and to Tompkins. This action can clearly be seen as an effort by Cumber to temper the situation and regain control of Tompkins. There are no facts in the record to suggest otherwise. In addition, only a *de minimis* use of force on Cumber's part, at best, is alleged. Tompkins did not sustain any injuries as a result of the strip search incident. For these reasons, a finding of summary judgment with respect to the excessive force claim is warranted in favor of Defendants.[3]

### C. Retaliation

Tompkins also claims that the strip search was conducted in retaliation for testimony she previously gave against the Lackawanna County Prison. To establish a retaliation claim, a prisoner bears the burden of satisfying three (3) elements. First, the prisoner must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, it must be demonstrated that the prisoner "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d at 333-34 (quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Third,

---

[3] To the extent Tompkins attempts to set forth a challenge to the strip search on the basis that male officers may have had the opportunity to see her exposed when the door to the bathroom opened and closed, the Court finds any such challenge to be without merit. First, courts have held that strip searches of prisoners in the presence of other inmates and staff is not constitutionally defective, especially in light of legitimate security concerns. See, e.g. Elliot v. Lynn, 38 F.3d 188 (5th Cir. 1994), cert. denied, 115 S. Ct. 176 (1995); Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988). In this case, Tompkins admits that only female correctional officers were present for the search and that the search took place in a bathroom behind closed doors. Further, there is absolutely no evidence in the record to suggest than any male officers actually saw Tompkins being searched during any brief period of time when the door may have been opened and closed.

the prisoner's constitutionally protected conduct must be a substantial motivating factor in defendants' conduct. See Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).

The third essential element requires a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this crucial causation component to a constitutional retaliation claim, Tompkins must allege facts which make an exacting showing. In order to do so, it has been found that to establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatiory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. V. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Once a plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter, 292 F.3d at 158. When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

In the instant case, even if it could be found that Tompkins was engaged in a constitutionally protected activity and that she suffered adverse action at the hands of Cumber, the undisputed facts fail to demonstrate the existence of a causal connection between Tompkins'

testimony before the grand jury in 2002 and the strip search conducted by Cumber in 2010. Further, Tompkins states that none of the testimony provided in 2002 was in any way related to Defendant Cumber or any other individual involved in the strip search incident. Moreover, even if the burden did shift to the Defendants with respect to the instant retaliation claim, the undisputed facts demonstrate the existence of a solid basis for conducting the strip search of Tompkins. She admits receiving contraband from her mother during the contact visit and to attempting to conceal the contraband on her person. It is was well within the discretion of the prison to conduct a strip search of Tompkins based upon a legitimate, justified suspicion that such activity had occurred. For these reasons, summary judgment is warranted in favor of Defendants with respect to the retaliation claim. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMIE LYNN TOMPKINS,** | : | CIVIL NO. 1:CV-11-1147 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **COUNTY OF LACKAWANNA, et al.,** | : | |
| Defendants | : | |

## ORDER

**AND NOW,** this 13th day of February, 2013, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. No. 24) is **deemed unopposed and is granted**. The Clerk of Court is directed to enter judgment in favor of Defendants on all claims and against Plaintiff.

2. The Clerk of Court is directed to **close this case**.

3. Any appeal from this order will be deemed frivolous, lacking in probable cause and not taken in good faith.


                                             S/ Yvette Kane
                                             YVETTE KANE, Chief Judge
                                             Middle District of Pennsylvania